UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:

R&R INDUSTRIES, INC.,                           Case No. 6:21-bk-01050-LVV
                                                Chapter 11 Subchapter V

            Debtor.
_____/

**EMERGENCY MOTION OF DEBTOR SEEKING ENTRY OF AN INTERIM AND FINAL ORDER AUTHORIZING THE DEBTOR TO OBTAIN POST PETITION FINANCING FROM THE DIP LENDER AND REQUEST FOR EMERGENCY HEARING**

The Debtor, R&R INDUSTRIES, INC. ( "the Debtor" or "R&R"), files this emergency motion pursuant to Sections 105, 361, 362, 363 and 364 of the U.S. Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), and Rules 2002, 4001, 6003, 6004 and 9014, *Federal Rules of Bankruptcy Procedure*, requesting authority to obtain credit, incur debt, grant liens, use cash collateral and other collateral and request an emergency hearing on the motion by April , 2020 (the "Motion"), as follows:

**Jurisdiction**

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. § 157(b).

2.      The Debtor continues to operate as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code and this Court's order authorizing it to continue doing business as a debtor-in-possession.

**Factual Background**

3. On March 11, 2021 (the "Petition Date"), the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor is authorized to continue to operate its business as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Jerrett McConnell is the Subchapter V Trustee appointed to this case.

4. R&R is a Florida S corporation and was incorporated in 1964. R&R specializes in the installation of roofing, heating, air conditioning and ventilation systems for commercial, industrial and residential properties, and has been serving the Daytona Beach area for over 55 years. R&R is located at 500 Carswell Avenue, Florida 32117. Guy Beasley is the principal and sole shareholder of the Debtor. The Debtor derives all its operating revenue from its operation of R&R.

5. The Chapter 11 filing was necessitated by accumulated debt and aggressive creditor activity brought about as a direct result of the Pandemic, and the negative effect this catastrophic event had on the local construction industry generally, and on R&R specifically. It was anticipated upon filing that the Chapter 11 case would result in a confirmed plan allowing R&R to restructure its debt on terms the business can bear through continued operations.

6. The Debtor remains confident that its projected business revenues from going forward operations will be sufficient to allow it to emerge successfully from Chapter 11, with prepetition debt being paid in full. The Debtor is experiencing, however, a short-term cash shortfall due to conditions unique to the building and construction industry at this time. Accordingly, the Debtor has sought DIP financing to enable it to successfully navigate Chapter 11 and restructure and pay its prepetition debt in full.

7. The Debtor has attempted to obtain alternative financing but has been unable to do so within the time constraints to allow this case to move forward.

8. Without additional financing, the Debtor will be unable to continue operations and will risk conversion or dismissal of this case. Conversely, with DIP financing on the terms set forth herein, the Debtor expects to remain in business and to successfully complete a Plan of Reorganization calling for repayment of 100% of prepetition claims.

9. The Debtor and the DIP Lender agreed upon the terms and conditions of the DIP Loan, with those terms being set forth below.

### Bankruptcy Rule 4001 Summary Of Relief Requested (DIP Financing)

10. Pursuant to Bankruptcy Rule 4001(c)(1)(B), a concise statement of material provisions of the proposed DIP Loan Agreement and form of Interim Order are as follows:

A. **Interest Rate**: The Debtor shall pay interest at the U.S. prime rate (subject to at 4.00% floor) plus 11.75% per year.

B. **Maturity:** The DIP Loan shall mature, and all unpaid DIP Obligations shall be due and payable, upon the earliest (the "Maturity Date") of (i) 365 days after the Effective Date, (ii) the Debtor's exit from bankruptcy, and (iii) acceleration of the DIP Loan following an event of default.

C. **Events of Default:** the occurrence and continuation of each of the following shall constitute an event of default: the debtor shall: ail to timely pay any DIP lender expense or other DIP obligation; grant or permit to exist any lien on any DIP collateral, other than the DIP liens and existing liens; fail to satisfy any milestone, within 2 business days of its stated deadline; make any payment not expressly contemplated by, or otherwise fail to comply with, the budget (subject to permitted variances); or fail at any time to satisfy any cash-management requirement;

any representation, warranty, certification, or other statement made, or deemed made in or delivered pursuant to any DIP loan document, by the debtor shall be false in any material respect as of the date so made, deemed made, or delivered; the bankruptcy court or another court of competent jurisdiction shall enter an order, without the prior written consent of the DIP lender: granting adequate protection, under Bankruptcy Code section 361, 362, 363, or 364 or otherwise, to any party, except as set forth in the budget; granting relief from the automatic stay, under Bankruptcy Code section 362 or otherwise, to any party, other than the DIP lender, with respect to any DIP collateral; surcharging, under Bankruptcy Code section 506(c) or otherwise, any DIP collateral in any amount, or subjecting the DIP lender or DIP collateral to the equitable principle of marshaling; approving credit or debt (other than the DIP loans) secured by a lien, under bankruptcy code section 364 or otherwise, on any DIP collateral; approving any administrative-expense claim, expense, or cost against the debtor (other than the DIP claims), under Bankruptcy Code section 364, 502, 507, or otherwise, with priority of payment senior or equal to the DIP claims; modifying, staying, vacating, or rescinding any part of any DIP order; holding, adjudicating, or declaring any DIP lien or DIP claim (or the priority, validity, or enforceability thereof), any DIP obligation, any DIP loan document, or any right or remedy of the DIP lender to be invalid, unenforceable, or otherwise subject to question, challenge, or impairment; enjoining, restraining, or in any other way preventing a debtor from conducting any material part its business affairs; appointing an examiner or trustee in the debtor's case; confirming any Chapter 11 plan that does not provide for repayment in full in cash on the effective date of such plan of all outstanding DIP obligations; converting the debtor's case to a case under Bankruptcy Code Chapter 7; or dismissing the debtor's case;

the debtor, or an affiliate thereof, shall commence any action in, file any motion or application with, or make any other submission to the Bankruptcy Court or another court of competent jurisdiction (or join in or otherwise support the same) (x) seeking entry of any order described in the foregoing clause (iii) or (y) questioning or challenging, or that could be reasonably expected otherwise to impair, any DIP lien or DIP claim (or the priority, validity, or enforceability thereof), any DIP obligation, any DIP loan document, or any right or remedy of the DIP lender; any party (other than the debtor or an affiliate thereof) shall commence any action in, file any motion or application with, or make any other submission to the bankruptcy court or another court of competent jurisdiction (x) seeking entry of any order described in the foregoing clause (iii) or (y) questioning or challenging, or that could be reasonably expected otherwise to impair, any DIP lien or DIP claim (or the priority, validity, or enforceability thereof), any DIP obligation, any DIP loan document, or any right or remedy of the DIP lender; <u>provided</u> that the debtor has not timely filed a reasonable objection or opposition to such action, motion, or other submission; and the debtor shall fail to perform or comply with any other agreement, covenant, term, or condition in any DIP loan document, other than those listed in the preceding clauses (i)-(v); <u>provided</u> such failure has not been remedied (if capable of remedy) within 21 days of the earlier of (x) the debtor's becoming aware of such failure or (ii) the debtor's receipt of written notice from the DIP lender of such failure.

      D.    **<u>Priming Liens Under Section 364(c) and (d)</u>:** The Debtor covenants, represents, and warrants that, upon entry of the DIP Order, all DIP Obligations shall, pursuant to Bankruptcy Code section 364(c)(1), constitute DIP Claims, payable from and having recourse to all property of the Debtor's estates (expressly including all DIP Collateral).

1. **Grant of Security Interest.** Subject to the priorities set forth in subparagraph 2, below, as to all DIP Collateral, the Debtor assigns and conveys as security, grants a security interest in and Lien on, hypothecates, mortgages, pledges, and sets over and unto the DIP Lender all right, title, and interest of the Debtor in the DIP Collateral (collectively, the "DIP Liens"), including all Avoidance Actions. The Debtor acknowledges that, pursuant to the DIP Order, the DIP Liens granted to the DIP Lender in all DIP Collateral shall be automatically perfected without reference to any notice or recordation requirements of non-bankruptcy law.

2. **DIP Liens.** The Debtor covenants, represents, and warrants that, upon entry of DIP Order, the DIP Liens shall comprise: Pursuant to Bankruptcy Code section 364(c)(2), an automatically perfected, senior DIP Lien on all DIP Collateral not subject to Existing Liens; Pursuant to Bankruptcy Code section 364(c)(3), an automatically perfected, junior DIP Liens on all DIP Collateral subject to Existing Liens;  Pursuant to Bankruptcy Code section 364(d)(1), an automatically perfected, equal DIP Liens on all DIP Collateral subject to Existing Liens, other than Permitted Senior Liens; and Pursuant to Bankruptcy Code section 364(d)(1), an automatically perfected, senior DIP Liens on all DIP Collateral subject to Existing Liens, other than Permitted Senior Liens.

3. **Liens on Avoidance Actions:** As part of the collateral for the DIP Loan, DIP Lender shall receive a lien on avoidance actions and the proceeds thereof under Chapter 5 of the Bankruptcy Code, if any (the "Avoidance Actions"). Notwithstanding the foregoing, Avoidance Actions and proceeds thereof, if any, shall not constitute DIP Collateral, as defined in the DIP Loan Agreement, until after the entry of a Final Order.  (DIP Loan Agreement, p. 5).

E.     **Release and Indemnification**: The Debtor shall indemnify the DIP Lender and its Affiliates (expressly including Legalist, Inc. and Legalist DIP GP, LLC), together with their

respective partners, directors, officers, managers, members, partners, investors, employees, contractors, agents, administrators, advisors (including attorneys), and representatives, against, and hold each such Person (each an "Indemnified Person") harmless from, all liabilities, obligations, losses, damages, penalties, claims, actions, causes of action, judgments, suits, costs, expenses, fees, and disbursements, of any kind or nature whatsoever, whether direct, indirect, special, exemplary, or consequential and whether based on federal, state, foreign, or international laws, statutes, rules, or regulations, that may be imposed on, incurred by, or asserted against such Indemnified Person, in any way arising from, in connection with, or relating to any DIP Loan Document, the transactions contemplated thereby, or any action taken or not taken in connection therewith (collectively, the "Indemnified Liabilities"); <u>provided</u> that such indemnity shall not be available to an Indemnified Person to the extent that any Indemnified Liability was a direct result, as determined by a court of competent jurisdiction, in a final and non-appealable order, of the gross negligence or willful misconduct of such Indemnified Person. The Debtor's payment obligations with respect to any Indemnified Liability shall constitute DIP Obligations for all purposes, and each Indemnified Person not a Party shall be a third-party beneficiary of this Agreement for purposes enforcing such obligations.

## Relief Requested

### A.   The Critical Need for the DIP Loan

11.    The Debtor is in immediate need of funds to cover: (i) working capital shortfalls; (ii) employee salary and independent contractor wages; (iii) required utility payments; (iv) payments to its vital and critical vendors and suppliers; and (v) professional and administrative fees. Continued operation and maintenance are necessary to preserve the going concern value of the Debtor's business.

12. Section 364 of the Bankruptcy Code allows a debtor to: (a) obtain unsecured credit in the ordinary course of business, (b) obtain unsecured credit out of the ordinary course of business, and (c) obtain credit with specialized priority or with security. If a debtor-inpossession cannot obtain post-petition credit on an unsecured basis, a bankruptcy court may authorize the obtaining of credit or the incurring of debt, the repayment of which is entitled to superpriority administrative expense status or is secured by a lien on unencumbered property, or combination of the foregoing.

13. Section 364(d)(1) of the Bankruptcy Code provides that a court may authorize a debtor to incur post-petition debt on a senior or "priming" basis if: (a) the Debtor is unable to obtain credit otherwise and (b) there is "adequate protection" of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted. *See* 11 U.S.C. § 364(d)(1).

14. As noted above, the need for the Debtor to obtain financing is critical. Further, the evidence at the Hearing will show that a working capital facility of the type needed in this chapter 11 case could not have been obtained on any other basis.

**B. The Debtors' Lack of Alternative Financing.**

15. It is well recognized that the appropriateness of a proposed post-petition financing facility must be considered in light of the current market conditions. *See In re Lyondell Chem. Co.*, No. 09-10023 (Bankr.S.D.N.Y. 2009). Indeed, courts often recognize that where there are few lenders likely able and willing to extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [a debtor] to conduct such an exhaustive search for financing." *See In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr.N.D.Ga. 1988). Rather, a debtor must demonstrate that it made a reasonable effort to seek credit from other sources

available under Section 364(a) and (b). *See In re Plabell Rubber Prods. Inc.*, 137 B.R. 897, 899900 (Bankr.N.D.Ohio 1992).

## Summary

16. This Motion seeks authorization and approval of a debtor-in-possession loan (the "DIP Loan") from Legalist DIP GP, LLC ("the DIP Lender"), on the terms and conditions consistent with those set forth in the Summary of Key Terms of an Conditions for Debtor-In-Possession Term Loan Facility, (the "DIP Loan Agreement"), attached hereto and incorporated herein as Exhibit "A."

17. Through the DIP Loan Agreement, the DIP Lender agrees to make a loan to Debtor in the aggregate amount of $1 million ("the Loan Proceeds"), to be made in a single draw, with the primary use of the Loan Proceeds to be for operating expenses of the Debtor during this case.

## Certification of Necessity of Request for Expedited Hearing

18. I hereby certify, as a member of the Bar of the Court, that I have carefully examined the matter under consideration and to the best of my knowledge, information and belief formed after reasonable inquiry, all allegations are well grounded in fact and all contentions are warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law can be made, that the matter under consideration is not interposed for any improper purpose, such as to harass, to cause delay, or to increase the cost of litigation, and there is just cause to request a consideration of this Motion on an emergency basis.

19. I certify further that there is a true necessity for an expedited hearing, specifically, that the requested relief of authorizing the Debtor to obtain DIP financing is necessary to ensure that the Debtor can continue its operations.

20. I certify further that the necessity of this expedited hearing has not been caused by a lack of due diligence on my part but has been brought about only by circumstances beyond my control or that of my clients. I further certify that this motion is filed with full understanding of F. R. B. P. 9011 and the consequences of noncompliance with same.

**WHEREFORE**, for the foregoing reasons, Debtor, R&R INDUSTRIES, INC. respectfully requests that this Court enter an Order granting this Motion; authorizing DIP financing on the terms contained herein; and for any and such other and further relief as this Court deems just and equitable.

Respectfully Submitted,

*/s/ Scott W. Spradley*
Scott W. Spradley
Florida Bar No.: 782467
Law Offices of
Scott W. Spradley, P.A.
109 South 5th Street
P.O. Box 1
Flagler Beach, FL 32136
Tel: 386/693-4935
Fax: 386/693-4937
scott@flaglerbeachlaw.com
Attorneys for the Debtor

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 23, 2021, all interested parties were served by first class, U.S. mail, postage prepaid, or by electronic mail, including the following:

United States Trustee-ORL 11,
George C. Young Federal Building
400 W. Washington St., Suite 1100
Orlando, FL 32801
Email: USTP.Region21.OR.ECF@usdoj.gov

*/s/ Scott W. Spradley*
Scott W. Spradley

July 7, 2021

Summary of Key Terms of and Conditions for
**DEBTOR-IN-POSSESSION TERM LOAN FACILITY**

R&R Industries, Inc.
<u>c/o</u>: Scott W. Spradley, Esq.
Law Offices of Scott W. Spradley PA
scott@flaglerbeachlaw.com

**CC: Heather Davey**

The following summarizes the key terms (the "**Term Sheet**") on which certain investment fund(s) for which Legalist DIP GP, LLC serves as general partner (the "**DIP Lender**") are willing to extend postpetition financing (the "**DIP Loans**") to R&R Industries, Inc. (the "**Debtor**") in connection with its chapter 11 case pending in the United States Bankruptcy Court for the Middle District of Florida (the "**Bankruptcy Court**"), in an aggregate amount of $1,000,000 (the "**DIP Commitment**").

Prior to satisfaction of the Conditions Precedent to funding, this Term Sheet shall be *confidential, non-binding, for discussion purposes only, and not a commitment to lend*.

| Overview | The DIP Loans shall be made available to the Debtor in the aggregate amount of the DIP Commitment for the following uses:<br>1. Legal fees of Law Offices of Scott W. Spradley PA, including $7,500 to cover the negotiation and filing of this DIP deal;<br>2. Refinance/pay down prepetition lender(s), as applicable;<br>3. Operating expenses of the Debtor; and<br>4. Other agreed-on uses. |
|---|---|
| **Conditions Precedent to DIP Draw** | The DIP Lender will make available DIP Loans in a single draw, provided no event of default shall (x) have occurred and be continuing or (y) be reasonably likely to result therefrom, upon (such date, the "**Effective Date**"):<br>1. The DIP Lender's completion, to its own satisfaction, of any remaining due diligence;<br>2. The Debtor's delivery of a fully executed credit agreement in Approved Form;[1] and<br>3. The Bankruptcy Court's entry of a final financing order approving the DIP Loans and otherwise in Approved Form (the "**DIP Order**"), which remains in full force and effect.<br><br>The Debtor shall file a motion for expedited approval of the DIP Loans no later than three weeks from the execution of this Term Sheet, or an additional one-time "**Reserved Funds Fee**" of 1.00% of the DIP Commitment shall be earned. |
| **Interest; Default Interest; Undrawn Line Fee** | The outstanding principal amount of the DIP Loans (together with all other due and payable DIP Obligations (defined below)) shall accrue paid-in-kind interest from the Effective Date at the U.S. prime rate (subject to a 4.00% floor) plus 11.75% per year. While an event of default has occurred and is continuing, such amounts shall accrue an additional 4.75% in interest per year. If the DIP Loans are not borrowed in full in a single draw, any undrawn portion of the DIP Commitment shall accrue an "**Undrawn Line Fee**" from the Effective Date at 4.75% per year. All such interest and fees shall accrue and be compounded and capitalized monthly and be due and payable in cash upon the Maturity Date. |
| **Other Costs of Borrowing** | A onetime "**Commitment Fee**" of 2.75% of the DIP Commitment and "**Underwriting Fee**" of 1.75% of the DIP Commitment shall be fully and irrevocably earned upon the Effective Date. In addition, a "**Monitoring Fee**" of 1.75% of the DIP Commitment per year shall accrue and be compounded and capitalized monthly. All such fees shall be due and payable in cash upon the Maturity Date. |
| **Prepayments** | The DIP Loans shall be mandatorily repaid from, and within 10 days of the Debtor's receipt of, proceeds from any sale or other disposition of DIP Collateral; <u>provided</u> that any such disposition shall |

---

[1] "**Approved Form**" means in form and substance acceptable to (as evidenced by the prior written consent of) the DIP Lender.

| | |
|---|---|
| | occur in Approved Form. Any repayment required to be made within 270 days of the Effective Date shall be accompanied by a "**Makewhole Fee**" of 4.75% of the amount required to be repaid. The DIP Loans may be voluntarily repaid prior to the Maturity Date beginning 180 days after the Effective Date; <u>provided</u> that voluntary repayments made within 270 days of the Effective Date shall be subject to a Makewhole Fee. |
| **Maturity Date** | The DIP Loans shall mature, and all unpaid DIP Obligations shall be due and payable, upon the earliest (the "**Maturity Date**") of (i) 365 days after the Effective Date, (ii) the Debtor's exit from bankruptcy, and (iii) acceleration of the DIP Loans following an event of default. |
| **Superpriority Claims; DIP Liens; DIP Collateral** | Subject to a customary carveout for estate professional fees and other administrative expenses, all DIP Obligations shall constitute DIP Claims,[2] payable from the DIP Collateral and all other property of the Debtor's estate. The DIP Order shall grant the DIP Lender automatically perfected security interests (collectively, the "**DIP Liens**"), senior to all pre- and postpetition liens, on all present or future estate property (collectively, the "**DIP Collateral**"). |
| **Break-Up Fee** | In the event that, after execution hereof, the transaction described herein should not be timely effected for any reason, the DIP Lender shall immediately (and without any further action or notice) be entitled to a fee of 4.75% of the DIP Commitment (the "**Break-Up Fee**").[3] |
| **DIP Lender Expenses; Other DIP Obligations** | The Debtor shall pay, no later than the Maturity Date, all reasonable costs and expenses of the DIP Lender incurred in connection with the DIP Loans (collectively, the "**DIP Lender Expenses**"). The DIP Lender Expenses, together with all principal of, and interest and fees on, the DIP Loans, together with any other amount owed by the Debtor in connection therewith shall constitute "**DIP Obligations**" secured by the DIP Liens. |
| **Miscellaneous Provisions** | Customary and as reasonably required by the DIP Lender, including:<br>• Debtor's representations, warranties, and covenants (including budget and reporting);<br>• Stay waiver (notwithstanding Bankruptcy Rule 6004);<br>• Indemnity of DIP Lender and its affiliates;<br>• Section 364(e) "good faith" findings in favor of the DIP Lender;<br>• Carveout (2.50% of DIP Loans post-default);<br>• Events of default and DIP Lender's rights and remedies; and<br>• Governing Law (Bankruptcy Code / New York State). |

*Note that this Term Sheet relates solely to a proposed <u>debtor-in-possession financing</u>.*
*The DIP Lender <u>does not offer</u> exit financing or otherwise extend credit to entities outside chapter 11.*

---

[2] "**DIP Claims**" means "superpriority" administrative-expense claims with priority over (i) all other administrative-expense claims, expenses, and costs permitted by, described in, or entitled to priority under the Bankruptcy Code and (ii) all other unsecured claims against the Debtor.

[3] The Debtor acknowledges that the Break-Up Fee is intended to be an actual, necessary cost and/or expense of preserving its estate and, thus, entitled to priority under Bankruptcy Code section 503(b). The Break-Up Fee, together with all costs of collection, shall be due and payable (if applicable) from and after execution of this Term Sheet by the Debtor, irrespective of the occurrence of the Effective Date.

2

**This Term Sheet shall expire and be without further effect if not signed by both parties by July 14, 2021.**

Accepted and agreed to, as of the first date written above:

| **DEBTOR:** | **DIP LENDER:** |
|---|---|
| R&R Industries, Inc. | LEGALIST DIP GP, LLC, as General Partner |
| By: | By: _____ |
| Name: Larry T. Beasley II | Name: Christian G.B. Haigh |
| Title: President | Title: Managing Member |