UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:

R&R INDUSTRIES, INC.,  Case No. 6:21-bk-01050-LVV
 Chapter 11 Subchapter V

       Debtor.
_____/

### EMERGENCY MOTION OF DEBTOR SEEKING APPROVAL OF INSURANCE PREMIUM FINANCING AGREEMENT WITH AFCO CREDIT CORP. AND REQUEST FOR EMERGENCY HEARING

The Debtor, R&R INDUSTRIES, INC. ( "the Debtor" or "R&R"), files this, its *Emergency Motion Seeking Approval of Insurance Financing with AFCO Credit Corporation* ("AFCO") ("the Insurance Premium Financing Agreement") *and Request for Emergency Hearing* ("the Motion"), pursuant to Sections 105, 361, 362, 363 and 364 of the U.S. Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), and Rules 2002, 4001, 6003, 6004 and 9014, *Federal Rules of Bankruptcy Procedure*, (the "Motion"), as follows:

### Jurisdiction

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. § 157(b).

2. The Debtor continues to operate as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code and this Court's order authorizing it to continue doing business as a debtor-in-possession.

**Factual Background**

3.  On March 11, 2021 (the "Petition Date"), the Debtor filed a petition for relief under Chapter 11, Subchapter V of the Bankruptcy Code. The Debtor is authorized to continue to operate its business as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Jerrett McConnell is the Subchapter V Trustee appointed to this case.

4.  R&R is a Florida S corporation and was incorporated in 1964. R&R specializes in the installation of roofing, heating, air conditioning and ventilation systems for commercial, industrial and residential properties, and has been serving the Daytona Beach area for over 55 years. R&R is located at 500 Carswell Avenue, Florida 32117. Guy Beasley is the principal and sole shareholder of the Debtor. The Debtor derives all its operating revenue from its operation of R&R.

5.  The Debtor maintains two insurance policies which provide the type of insurance coverage required of Florida roofing companies: (i) a policy with United Specialty Insurance, Inc. for general liability, with an annual premium of $201,494; and (ii) a policy with Commerce & Industry Insurance Company for extra liability with an annual premium of $89,100 (collectively, "the Insurance Policies" and "the Insurance Premiums").

6.  The Insurance Premium Financing Agreement would provide the Debtor with the total sum of $225,639.36 for payment of the Insurance Premiums. A copy of the term sheet setting forth proposed agreement between the Debtor and AFCO is attached hereto as Exhibit "A."

7.  This Chapter 11 filing was necessitated by accumulated debt and aggressive creditor activity brought about as a direct result of the Pandemic, and the negative effect this catastrophic event had on the local construction industry generally, and on R&R specifically. It

was anticipated upon filing that the Chapter 11 case would result in a confirmed plan allowing R&R to restructure its debt on terms the business can bear through continued operations.

8. The Debtor remains confident that its projected business revenues from going forward operations will allow it to emerge successfully from Chapter 11, with prepetition debt being paid in full. The Debtor is experiencing, however, a short-term cash shortfall due to conditions unique to the building and construction industry at this time. Accordingly, the Debtor has sought DIP financing to enable it to successfully navigate Chapter 11 and restructure and pay its prepetition debt in full.

9. Moreover, the Debtor seeks approval of this Motion in order to have funds advanced to enable the Debtor to remain current on the Insurance Policies. The Insurance Policies are required for the Debtor to meet its licensing and bonding requirements as a condition of doing commercial and residential roofing business.

10. The Debtor has attempted to obtain alternative financing but has been unable to do so within the time constraints to allow this case to move forward.  In fact, financing the Insurance Premiums through AFCO is the most efficient and least expensive means for the Debtor to remain current on the Insurance Policies.

11. Without approval of the Insurance Premium Financing Agreement, the Debtor's ability to maintain uninterrupted insurance coverage will be at risk, which in turn may render the Debtor unable to continue business operations and risk conversion or dismissal of this case. Conversely, with the subject financing on the terms set forth herein, the Debtor expects to continue unfettered operations and to successfully complete a Plan of Reorganization calling for repayment of 100% of prepetition claims.

12. The Debtor and AFCO agreed upon the terms and conditions of the subject Insurance Premium Financing Agreement, with those terms being set forth below and in attached Exhibit "A."

## Bankruptcy Rule 4001 Summary Of Relief Requested

13. Pursuant to Bankruptcy Rule 4001(c)(1)(B), a concise statement of material provisions of the proposed Insurance Premium Financing Agreement and form of Interim Order are as follows:

    A. **Interest Rate**: The Debtor shall pay interest at the rate of 8.25% A.P.R.

    B. **Maturity:** The subject loan will be repaid in 8 monthly installments of $28,204.92 each.

    C. **Events of Default:** the failure of the Debtor to make a monthly payment when due, followed by the expiration of a 10-day grace period will result in the declaration of a default.

    D. **Grant of Security Interest.** The Debtor agrees to grant AFCO a security interest in any and all unearned premiums and dividends which may become payable under the Insurance Policies which reduce the unearned premiums, subject to any loss payee interest.

## Basis for Relief Requested

**A. The Critical Need for the Insurance Financing Loan**

14. The Debtor is in immediate need of the subject funds to enable the Debtor to maintain insurance coverage under the Insurance Policies.

15. Section 364 of the Bankruptcy Code allows a debtor to: (a) obtain unsecured credit in the ordinary course of business, (b) obtain unsecured credit out of the ordinary course of business, and (c) obtain credit with specialized priority or with security. If a debtor-in-possession cannot obtain post-petition credit on an unsecured basis, a bankruptcy court may

authorize the obtaining of credit or the incurring of debt, the repayment of which is entitled to superpriority administrative expense status or is secured by a lien on unencumbered property, or combination of the foregoing.

16. Section 364(d)(1) of the Bankruptcy Code provides that a court may authorize a debtor to incur post-petition debt on a senior or "priming" basis if: (a) the Debtor is unable to obtain credit otherwise and (b) there is "adequate protection" of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted. *See* 11 U.S.C. § 364(d)(1).

17. As noted above, the need for the Debtor to obtain insurance premium financing is critical. Further, the evidence at a hearing will show that a working capital facility of the type needed in this Chapter 11 case could not have been obtained on any other basis.

**B. The Debtors' Lack of Alternative Financing.**

18. It is well recognized that the appropriateness of a proposed post-petition financing facility must be considered in light of the current market conditions. *See In re Lyondell Chem. Co.*, No. 09-10023 (Bankr.S.D.N.Y. 2009). Indeed, courts often recognize that where there are few lenders likely able and willing to extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [a debtor] to conduct such an exhaustive search for financing." *See In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr.N.D.Ga. 1988). Rather, a debtor must demonstrate that it made a reasonable effort to seek credit from other sources available under Section 364(a) and (b). *See In re Plabell Rubber Prods. Inc.*, 137 B.R. 897, 899900 (Bankr.N.D.Ohio 1992). The evidence will show that the Debtor has made reasonable efforts to seek credit from other sources.

**Summary**

19.     This Motion seeks authorization and approval of the Insurance Premium Financing Loan from AFCO to the Debtor on the terms and conditions contained in the term sheet attached hereto and incorporated herein as Exhibit "A."

20.     Through the Insurance Premium Financing Agreement, AFCO agrees to make a loan to Debtor in the aggregate amount of $225,639.36 ("the Loan Proceeds"), to be used as premium payments for the Insurance Policies.

**Certification of Necessity of Request for Expedited Hearing**

21.     I hereby certify, as a member of the Bar of the Court, that I have carefully examined the matter under consideration and to the best of my knowledge, information and belief formed after reasonable inquiry, all allegations are well grounded in fact and all contentions are warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law can be made, that the matter under consideration is not interposed for any improper purpose, such as to harass, to cause delay, or to increase the cost of litigation, and there is just cause to request a consideration of this Motion on an emergency basis.

22.     I certify further that there is a true necessity for an expedited hearing, specifically, that the requested relief of authorizing the Debtor to obtain insurance premium financing is necessary to ensure that the Debtor can continue its operations.

23.     I certify further that the necessity of this expedited hearing has not been caused by a lack of due diligence on my part but has been brought about only by circumstances beyond my control or that of my clients. I further certify that this motion is filed with full understanding of F. R. B. P. 9011 and the consequences of noncompliance with same.

**WHEREFORE**, for the foregoing reasons, Debtor, R&R INDUSTRIES, INC. respectfully requests that this Court enter an Order granting this Motion; authorizing Insurance Premium Financing on the terms contained herein; and for any and such other and further relief as this Court deems just and equitable.

Respectfully Submitted,

*/s/ Scott W. Spradley*
Scott W. Spradley
Florida Bar No.: 782467
Law Offices of
Scott W. Spradley, P.A.
109 South 5th Street
P.O. Box 1
Flagler Beach, FL 32136
Tel: 386/693-4935
Fax: 386/693-4937
scott@flaglerbeachlaw.com
Attorneys for the Debtor

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 2, 2021, all interested parties were served by first class, U.S. mail, postage prepaid, or by electronic mail, including the following:

United States Trustee-ORL 11,
George C. Young Federal Building
400 W. Washington St., Suite 1100
Orlando, FL 32801
Email: USTP.Region21.OR.ECF@usdoj.gov

                                              */s/ Scott W. Spradley*
                                              Scott W. Spradley

# AFCO

**Premium Finance Agreement**
5600 NORTH RIVER ROAD, SUITE 400, ROSEMONT, IL 60018-5187
TEL. NO. 877-701-1212

(CHECK APPROPRIATE BOX)
[ ] PERSONAL
[X] COMMERCIAL

| | | AGENT (NAME & PLACE OF BUSINESS) | PRODUCER CODE NO. AN674 | INSURED (NAME & RESIDENCE OR BUSINESS ADDRESS) |
|---|---|---|---|---|
| A | TOTAL PREMIUMS $311,536.20 | INS OFFICE OF AMERICA INC (IOA) LONGWOOD PO BOX 162207 ALTAMONTE SPRINGS, FL 32716 (407) 788-3000 | | R & R INDUSTRIES, INC. 500 CARSWELL AVE. HOLLY HILL, FL 32117 (386) 492-6056 |
| B | DOWN PAYMENT $93,460.86 | | | |

## PAYMENT SCHEDULE

| | AMOUNT FINANCED (A Minus B) | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | WHEN PAYMENTS ARE DUE | |
|---|---|---|---|---|---|
| | | | | FIRST INSTALLMENT DUE | INSTALLMENT DUE DATES |
| C | $218,075.34 | 8 (Monthly) | $28,204.92 | 8/16/2021 | 16th |

## SCHEDULE OF POLICIES

| | FINANCE CHARGE | POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY/ ANNUAL INSTALLMENT | NAME OF INSURANCE COMPANY AND NAME AND ADDRESS OF GENERAL OR POLICY ISSUING AGENT | TYPE OF COVER | MONTHS COVERED BY PREMIUM | PREMIUM $ |
|---|---|---|---|---|---|---|---|
| D | $6,800.67 | | | | | | |
| E | DOCUMENTARY STAMP TAX $763.35 | TBD A.R.=N Audit=N AddCxlDays=0 Min Ernd=25.000 | 7/16/2021 | UNITED SPECIALTY INSURANCE CRC INSURANCE SERVICES INC PO BOX 59689 BIRMINGHAM, AL 35259 | GL Taxes Fees | 12 | 210,494.00 10,592.20 1,350.00 |
| F | TOTAL OF PAYMENTS (C + D + E) $225,639.36 | TBD A.R.=N Audit=N AddCxlDays=0 Min Ernd=25.000 | 8/15/2021 | COMMERCE & INDUSTRY INS CO CRC INSURANCE SERVICES INC PO BOX 59689 BIRMINGHAM, AL 35259 | XLIA Taxes Fees | 12 | 89,100.00 0.00 0.00 |
| G | ANNUAL PERCENTAGE RATE 8.25% | | TME=$74898.50 | | | | |
| | | | | TOTAL PREMIUMS must agree with Block "A" Above ---> TOTAL | | | $311,536.20 |

**SECURITY AGREEMENT**

**1. DEFINITIONS:** The above named insured ("the insured") is the debtor. AFCO Credit Corporation ("AFCO"), is the lender to whom the debt is owed. Singular words shall mean plural and vice versa as may be required in order to give the Agreement meaning. "Insurance company or company", "insurance policy or policy" and "premium" refer to those items listed under "Schedule of Policies".

**NOTICE:** 1. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACE. 2. YOU ARE ENTITLED TO A COMPLETELY FILLED-IN COPY OF THIS AGREEMENT. 3. UNDER THE LAW, YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND UNDER CERTAIN CONDITIONS TO OBTAIN A PARTIAL REFUND OF THE SERVICE CHARGE.

THE INSURED AGREES TO THE PROVISIONS ABOVE AND ON THE LAST PAGE OF THIS AGREEMENT

X _____

Date _____

SIGNATURE OF INSURED(S) OR DULY AUTHORIZED AGENT OF INSURED(S)

**PRODUCER'S REPRESENTATIONS**

The undersigned warrants and agrees:
(1) the insured has received a copy of this Agreement, and the Required Federal Truth-in-Lending Disclosures for Personal Lines Insurance, if applicable, (2) the policies are in full force and effect and the information in the schedule of policies and the premiums are correct, (3) the insured has authorized this transaction and recognizes the security interest assigned herein, (4) to hold in trust for AFCO any payments made or credited to the insured through or to the undersigned, directly, indirectly, actually or constructively by any of the insurance companies and to pay the monies to AFCO upon demand to satisfy the then outstanding indebtedness of the insured and that any lien the undersigned now has or hereafter may acquire on any return premium arising out of the above listed insurance policies is subordinated to AFCO's lien or security interest therein, (5) there are no exceptions to the policies financed other than those indicated and the policies comply with AFCO's eligibility requirements, (6) no Audit or Reporting Form Policies, policies subject to Retrospective Rating or to minimum earned premiums are included except as indicated and that the Deposit or Provisional Premiums are not less than anticipated premiums to be earned for the full term of the policies, if policy is subject to minimum earned premium, it is $ 74898.50 , (7) the policies can be cancelled by the insured or the company on 10 days notice and the unearned premiums will be computed on the standard short rate or pro rata table except as indicated, (8) ~~the undersigned represents that a proceeding in bankruptcy, receivership or insolvency has not been instituted by or against the named insured or if the named insured is the subject of such a proceeding it is noted on the Premium Finance Agreement~~ in the space in which the insured's name and address is placed.

**Indicate Policy & Prefix Number of Exceptions**
See above under 'Policy Prefix and Numbers'

Date _____  X _____
SIGNATURE OF AGENT OR BROKER

**REMAINING PROVISIONS OF SECURITY AGREEMENT**                Page 2 of 2

**2. PROMISE OF REPAYMENT:** The insured requests AFCO to pay the premiums on the policies shown above. The insured promises to pay to AFCO at its office the amount stated in Block F above, according to the Payment Schedule shown above subject to the rest of the terms of this contract.

**3. SECURITY INTEREST:** The insured assigns to AFCO as security for the total amount payable in this Agreement any and all unearned premiums and dividends which may become payable under the insurance policies and loss payments which reduce the unearned premiums, subject to any mortgagee or loss payee interest. The insured gives to AFCO a security interest in all items mentioned in this paragraph.

**4. DEFAULT CHARGES:** If the insured is more than 5 days late in making an installment payment to AFCO, then the insured will pay to AFCO, in addition to the delinquent installment, a default charge of 5% of the unpaid balance of the delinquent installment or $10, whichever is greater. If the loan is primarily for personal, family or household purposes, the default charge shall not exceed $10.

**5. FINANCE CHARGE:** The finance charge shown in Box D begins to accrue as of the earliest policy effective date.

**6. THIS AGREEMENT BECOMES A CONTRACT:** This Agreement becomes a binding contract when AFCO mails a written acceptance to the insured.

**7. WARRANTY OF ACCURACY:** The insured warrants to AFCO that the insurance policies listed in the schedule have been issued to the insured and are in full force and effect and that the insured has not assigned any interest in the policies except for the interest of mortgagees and loss payees.

**8. REPRESENTATION OF SOLVENCY:** The insured represents that the insured is not insolvent or presently the subject of any insolvency proceeding.

**9. CANCELLATION:** AFCO may cancel the insurance policies financed herein and the unpaid balance due to AFCO shall be immediately payable by the insured if, upon 10 days written notice to the insured, the insured does not pay any installment according to the terms of this Agreement. AFCO, at its option, may enforce payment of this debt without recourse to the security given to AFCO.

**10. POWER OF ATTORNEY:** The insured appoints AFCO its Attorney-in-Fact with full authority to cancel the insurance policies financed herein for nonpayment of premium.

**11. MONEY RECEIVED AFTER NOTICE OF CANCELLATION:** Any payments made to AFCO after AFCO's Notice of Cancellation of the insurance policies has been mailed may be credited to the insured's account without affecting the acceleration of this Agreement and without any liability or obligation on AFCO's part to request the reinstatement of the cancelled insurance polices. Any money AFCO receives from an insurance company shall be credited to the amount due AFCO with any surplus being paid over to the insured or the insured's agent for the benefit of the insured. No refund of less than $1.00 shall be made. If there is a balance due after AFCO receives the unearned premiums, dividends or loss payments from the insurance company then the insured will pay the balance to AFCO with interest at the rate shown in this contract.

**12. REFUNDS:** The insured will receive a refund of the finance charge if the account is prepaid in full prior to the last installment due date. The refund shall be computed according to the Rule of 78s subject to a $20 nonrefundable charge. If the refund is less than $1, no refund shall be made.

**13. INSURANCE AGENT OR BROKER:** AFCO makes no warrantees or representations concerning the financed insurance coverage nor has it played any part in the selection, structuring or acquisition of such coverage. This Agreement represents the entire understanding of the parties. AFCO has not authorized any party whatsoever to make any representations, commitments or promises or to play any role with respect to this premium finance transaction other than completing this contract on behalf of the insured.

**14. SPECIAL INSURANCE POLICIES:** If the insurance policy issued to the insured is auditable or is a reporting form policy or subject to retrospective rating, then the insured promises to pay the insurance company the earned premium computed in accordance with the policy provisions which is in excess of the amount of premium advanced by AFCO which the insurance company retains.

**15. CANCELLATION CHARGES:** If AFCO cancels the insurance policies, then the insured will pay AFCO a cancellation charge equal to the difference between $10 and the default charge.

**16. ATTORNEY FEES:** If, for collection, this Agreement is placed in the hands of an attorney who is not a salaried employee of AFCO, then the insured agrees to pay the attorney fees but no more than 20% of the amount due and payable under this Agreement.

**17. SUCCESSORS AND ASSIGNS:** All legal rights given to AFCO shall benefit AFCO's successors and assigns. The insured agrees not to assign the policy without AFCO's written consent except for the interest of mortgagees and loss payees.

**18. MISSING INFORMATION:** If the policy has not been issued at the time of signing this Agreement, then the insured agrees the name of the insurance company, and the policy numbers of the insurance policies may be left blank and may be subsequently inserted in this Agreement. AFCO will notify the insured of this information on its written Notice of Acceptance.

**19. ADDITIONAL PREMIUMS:** The money paid by AFCO is only for the premium as determined at the time the insurance policy is issued. AFCO's payment shall not be applied by the insurance company to pay for any additional premiums owed by the insured as a result of any type of misclassification of the risk. The insured agrees to pay the company any additional premiums which become due for any reason. AFCO may assign to the company any rights it has against the insured for premiums due the company in excess of the premiums returned to AFCO.

**20. AGENT'S WARRANTIES:** To convince AFCO to enter this Agreement and accept the security underlying this Agreement, the person executing this Agreement, if not the insured, warrants severally and as the duly authorized agent of the insured: that he is the duly authorized agent of the insured appointed specifically to enter into this transaction on the insured's behalf; that he can perform any act the insured could or should perform with respect to this transaction; that he will hold in trust for AFCO any payments made or credited to the insured through the undersigned or to the undersigned, directly, indirectly, actually or constructively, by any of the insurance companies and that he will pay the monies to AFCO upon demand to satisfy the then outstanding indebtedness of the insured.

**21. LAW GOVERNING THIS AGREEMENT:** The insured agrees that this Agreement shall be governed by the laws of the State of Florida.

**22. DISHONORED CHECK:** If an insured's check is returned because of insufficient funds to pay it, AFCO may impose a charge of $10.

**23. ENDORSEMENTS:** The insured agrees that AFCO may endorse his or her name on any check or draft for all monies that may become due from the insuring company and apply the same as payment of this Agreement returning any excess to his or her agent, provided that if such excess is in an amount less than $1 no refund shall be made.

2M - Last(5/98-win) [02-09]

| INSURED'S INITIALS |
|---|
|   |

| "INSURED" | | "AGENT" / BROKER OF RECORD |
|---|---|---|
| R & R Industries, Inc.<br>500 CARSWELL AVE.<br>HOLLY HILL, FL 32117 |  | INS OFFICE OF AMERICA INC<br>(IOA) LONGWOOD<br>PO BOX 162207<br>ALTAMONTE SPRINGS, FL 32716 |

## POLICY INFORMATION & RELATED QUOTE CONDITIONS
### QUOTE #: 2050757B-2

July 29, 2021

AFCO prepared the attached quote based on information provided by the "Agent" as set forth below. By executing the premium finance agreement the agent represents and warrants that the insured in the upper left-hand box of the PFA has the requisite authority to bind the Insured to the terms of the PFA, and all information provided below relating to the policies and the Insured is complete and accurate. If any of this information is incorrect or incomplete, please immediately contact your AFCO Account Executive. Unless otherwise noted below, all policies in this agreement are cancellable by standard pro rata or short rate tables.

### POLICY INFORMATION

| Pol Seq# | INSURANCE COMPANY | INTERMEDIARY | POLICY NUMBER | POL. TYPE | EFF DATE | TERM (MO) | POLICY PREMIUM | *Is the Policy Loss Responsive? | *Additional required Notice to Cxl. | Fully Earned Provisions | Minimum Earned % | *Master Policy |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | UNITED SPECIALTY INSURANCE | CRC INSURANCE SERVICES INC | TBD | GL | 7/16/2021 | 12 | $210,494.00 | N | 0 | N | 25.00 | N |
| 2 | COMMERCE & INDUSTRY INS CO | CRC INSURANCE SERVICES INC | TBD | XLIA | 8/15/2021 | 12 | $89,100.00 | N | 0 | N | 25.00 | N |

THE FOLLOWING POLICIES ARE SUBJECT TO AUDIT: SEQUENCE NUMBERS(S): NONE

|  |  |
|---|---|
| REFUNDABLE TAXES | $10,592.20 |
| NON-REFUNDABLE FEES | $1,350.00 |
| TOTAL | $311,536.20 |

### QUOTE CONDITIONS

EXECUTION OF THE ATTACHED BANKRUPTCY PAPERS BY THE COURT.

PRODUCER RETAINING DOWN PAYMENT AND INSTALLMENTS PAST OR DUE WITHIN 10 DAYS.

PLEASE CALL WITH QUESTIONS OR CHANGES. THANK YOU, CHRISTOPHER ROZEK

*ADDITIONAL REQUIRED NOTICE TO CANCEL: Any provision or condition of the policy that extends or impacts the ability of the insured to enact cancellation immediately upon request such as, state filings or lien holders.
*MASTER POLICY: A policy that covers a group of insureds identified as certificate holders. The groups relationships can be characterized, but not limited to, common ownership, industry affiliation, or by numerous insured's coming together for a group discount.
*IS THE POLICY LOSS RESPONSIVE?: Any policy where losses or claims are a factor in calculating return premium.

Page 1